■ FREDERICK W. EHLERS et al., Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 49514.) — Appeals (1) from an order of the Court of Claims, entered August 30, 1971, which granted respondent's motion for leave to file and serve a counterclaim, and (2) from a judgment of said court in favor of respondent, entered on September 1, 1971, upon a decision of a Referee, awarding respondent the sum of $44,824.64 upon the counterclaim. Claimants were the owners of about 35.679 acres of land in the Town of Brookhaven, County of Suffolk, which had 1,635 feet of frontage on the north side of the Jericho Turnpike and 1,279 feet of frontage on the easterly side of Randall Road. The frontage along Jericho Turnpike was zoned J-2 business to a depth of 100 feet and which permitted business uses such as drycleaning plants, laundries, drug stores, delicatessens, automobile showrooms, etc. The remainder of the property was zoned B residential. Shopping centers are permitted only in a J-3 zone under the zoning law. On November 18, 1965, the State, pursuant to section 30 of the Highway Law, appropriated without the right of access a strip of land extending westerly from the easterly boundary of the claimants' property along Jericho Turnpike a distance of 800 feet. This strip varied in width from one foot to five feet and a chain link fence six feet high was erected along the entire length of the strip. The remaining 835 feet of frontage on Jericho Turnpike remained unaffected. The State thereafter offered claimants $46,500 in full settlement of any claim based upon a project appraisal prepared for the State. This offer was refused and an agreement was reached pursuant to subdivision 13 of section 30 of the Highway Law, whereby the State prepaid $34,875 conditioned upon the repayment by claimants to the State of any amounts in excess of the amount which might be awarded by the Court of Claims. At the trial, the State introduced into evidence a second appraisal which had been made by the same appraiser who made the project appraisal. In this appraisal, this expert stated that the highest and best use of the claimants' lands before and after the appropriation was as a shopping center, a use inconsistent with the zoning of the lands and also inconsistent with his original project appraisal wherein he had stated that the highest and best use of the land was as zoned prior to the appropriation and that after the appropriation the highest and best use was the same except as to the easterly 600 by 100 feet along the fence which would change from J-2 business to residential, and could not be used for the type of business authorized in a J-2 area. In this second appraisal, he found direct damages of $325 and severance damages due to loss of access of $52,000 which he deemed noncompensable apparently on the ground that the highest and best use remained as a shopping center and that the circuitry of access caused by the fence would have no effect on the land valued as a shopping center. On cross-examination this expert testified that he changed his opinion as to the highest and best use when he reviewed the property in 1968 and noted all the changes and the trends and development in the neighborhood at that time and determined that the site had a potential for a shopping center within eight to ten years. This admission presents a serious question as to whether the State's appraiser actually evaluated the property as of the date of taking. It is fundamental that "to determine the market value of land appropriated, we must look to the situation existing on the day of taking." (*Arlen of Nanuet* v. *State of New York,* 26 N Y 2d 346, 354.) Claimants' expert valued the premises before and after the taking as zoned except that the land behind the fence

he considered to have only a residential use after the taking. He considered that the land had some potential for development as a shopping center sometime in the future providing that a zoning change could be effected. The Referee determined that the highest and best use of the premises despite the J-2 zoning, was for a large retail shopping center both before and after the appropriation and upon this finding determined direct damages of $325 and consequential damages of $52,000 which he determined to be noncompensable on the ground that the taking merely rendered access for shopping center purposes, merely circuitous rather than unsuitable, citing *Northern Lights Shopping Center* v. *State of New York* (20 A D 2d 415, affd. 15 N Y 2d 688, cert. den. 382 U. S. 826), and *Priestly* v. *State of New York* (23 N Y 2d 152). On this record, an award may not be predicated upon a highest and best use as a shopping center. Such utilization of the property would require a zoning change as to both the residential and business area from B residential and J-2 business to J-3 business. Since there is no evidence in the record that such a change is imminent, or that there is a reasonable probability of such a change, any consideration in the valuations of a highest and best use for a shopping center is mere speculation by the experts, and has no probative force or relevancy to the issue of value. (*Comstock* v. *State of New York*, 39 A D 2d 790.) The State's appraisal being based entirely upon a highest and best use as a shopping center, it must also be rejected since it valued the entire premises as a whole, thus failing to distinguish between the residential and business areas. The proper approach to value here sheds a different light upon the issue of circuitry of access and leads to the conclusion that access is not only circuitous, but also totally unsuitable for the existing use of all or substantially all of the land behind the fence. Under such circumstances consequential damages may be awarded for the reduction in value of that area. (*Priestly* v. *State of New York, supra*; *Columbus Holding Corp.* v. *State of New York*, 36 A D 2d 674.) Having reached the conclusion that consequential damages may be awarded, we reverse the Referee's determination that consequential damages in the sum of $52,000 are noncompensable and adopt that amount as consequential damages to be awarded to claimants. The judgment appeal from was entered September 1, 1971 which included the prepaid amount in the sum of $34,875 with interest thereon from September. 22, 1966 to September 1, 1971 less the amount awarded for direct damages in the sum of $325, making a total judgment in the sum of $44,824.64. This judgment was paid by the claimants to the State of New York after the State refused claimants' offer to deposit the money with the court until their appeal could be determined. The amount awarded for consequential damages is the sum of $52,500 which is $17,625 in addition to the amount of the prepayment in the sum of $34, 875. Judgment reversed, on the law and the facts, and counterclaim dismissed, with costs; judgment directed to be entered in favor of claimants in the amount of $52,500, together with appropriate interest. Settle order. Herlihy, P. J., Staley, Jr., Sweeney, Simons and Kane, JJ., concur.